UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TODD FISHER, SCOTT BREWER and
STEVEN TABER,
individually and on
behalf of all others
similarly situated,
  Plaintiffs,

v.                                                    CIVIL ACTION NO. 3:09-CV-1899 RNC

MITSUBISHI DIGITAL ELECTRONICS AMERICA, INC.,
  Defendant.


**MEMORANDUM IN SUPPORT OF THE MOTION OF TODD FISHER, SCOTT BREWER
AND STEVEN TABER REQUESTING CLASS CERTIFICATION AND FINAL APPROVAL
OF THE ACCOMPANYING PROPOSED CLASS ACTION SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

SUMMARY OF THE CASE ............................................................................... 1

PROCEDURAL HISTORY ................................................................................ 3

THE CLASS ACTION SETTLEMENT AGREEMENT ................................................. 4

    Settlement Class............................................................................................ 4

CLASS ACTION SETTLEMENT AGREEMENT TERMS ........................................... 4

    V26 and V30 Class Television Chassis warranty Extension, Reimbursement or
    Replacement Option ...................................................................................... 4

    V33 and V34 Class Television Chassis No Cost Replacement of Original DLP
    Lamp Cartridge or Reimbursement ................................................................. 5

    Warranty Fulfillment Benefits ........................................................................ 6

    Dispute Resolution Procedures ....................................................................... 6

    Settlement Administration and Administrative Costs ........................................... 7

    LEGAL ARGUMENT...................................................................................... 7

LEGAL ARGUMENT

I. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ......................................... 7

    A. The Prerequisites of Rule 23(a) Have Been Satisfied for Class Certification ................... 7

        1. Numerosity ......................................................................................... 8

        2. Commonality ....................................................................................... 8

        3. Typicality ........................................................................................... 11

        4. Adequacy of Representation ................................................................... 12

    B. The Requirements of Rule 23(b)(3) Have Been Satisfied .............................. 13

        1. Predominance Requirement of Common Questions of Law or Fact ................... 14

**TABLE OF CONTENTS**
**(continued)**

Page

2. Superiority Requirement ....................................................................... 14

    a. Interests of Individual Members............................................... 15

    b. Pending Proceedings ................................................................ 16

    c. Concentration of Litigation in One Forum .............................. 16

    d. Manageability .......................................................................... 16

II. THE COURT SHOULD GRANT FINAL APPROVAL OF THE
PROPOSED CLASS ACTION SETTLEMENT AGREEMENT SINCE
IT IS FAIR, REASONABLE AND ADEQUATE WHEN ANALYZED
UNDER THE GRINNELL FACTORS. ................................................... 16

    A. *Grinnell* Factor One: The Complexity, Expense and Likely
Duration of the Litigation ........................................................... 17

    B. *Grinnell* Factor Two: The Reaction of the Class to the Settlement ............................... 18

    C. *Grinnell* Factor Three: The Stage of the Proceedings and Amount
of Discovery Completed .............................................................. 19

    D. *Grinnell* Factor Four and Five: The Risks of Establishing Liability
And Damages ............................................................................... 20

    E. *Grinnell* Factor Six: The Risks of Maintaining the Class Action
Through Trial ............................................................................... 21

    F. *Grinnell* Factor Seven: The Ability of the Defendant to Withstand
a Greater Judgment ..................................................................... 21

    G. *Grinnell* Factors Eight and Nine: The Reasonableness of the Settlement
in Light of the Best Possible Recovery and Attendant Risks of Litigation ...................... 22

III. THE PROPOSED CLASS NOTICE IS REASONABLE, APPROPRIATE
AND SATISFIES FED. R. CIV. P. 23(C)(2) AND DUE PROCESS
REQUIREMENTS ................................................................................. 23

CONCLUSION AND RELIEF REQUESTED ............................................. 25

# TABLE OF AUTHORITIES

## CASES

**Page**

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................12, 14, 15, 16, 21, 24

*Andrews v. Bechtel Power Co.,*
    780 F.2d 124 (1st Cir. 1985) ............................................................... 12

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) .................................................................... 9

*Central Wesleyan College v. W.R. Grace & Co.,*
    6 F.3d 177 (4th Cir. 1993) .................................................................. 16

*Chiang v. Veneman,*
    385 F.3d 256 (3d. Cir. 2004) ................................................................ 9

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................ passim

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) .................................................................. 8

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ................................................................ 22

*Global Crossing,*
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................... 21

*Dietrich v. Bauer,*
    192 F.R.D. 119 (S.D.N.Y. 2000) ........................................................ 12

*Dura-Built Corp. v. Chase Manhattan Corp.,*
    89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................. 9

*Georgine v. Amchem Prods., Inc.,*
    83 F.3d 610 (3d Cir. 1996) ............................................................ 11, 12

*German v. Federal Home Loan Mortgage Corp.,*
    885 F.Supp. 537 (S.D.N.Y. 1995) ......................................................... 8

*In re "Agent Orange" Prod. Liab. Litig.,*
    818 F.2d 145 (2d Cir. 1987) ................................................................ 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Cendant Corp Litig*,
    264 F.3d 201 (3d Cir. 2001) ................................................................................ 19

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ............................................................................. 13

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195, 208 (5th Cir. 1981) ....................................................................... 13

*In re Currency Conversion Fee Antitrust Litig.*,
    224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................................... 9

*In re Drexel Burnham Lambert Group*,
    960 F.2d 285 (2d Cir. 1992) ................................................................................ 12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank*,
    55 F.3d 768 (3d Cir. 1995) .................................................................................. 17

*In re Global Crossing*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 22

*In re Hitachi Television Optical Block Cases*,
    No. 08-cv-1746 DMS (NLS),  2011 WL 4499036 (S.D. Cal. Sept. 27, 2011) ........ 21

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D.Pa. 2000) ........................................................................... 20

*In re Indus. Diamonds Antitrust Litig.*,
    167 F.R.D. 374 (S.D.N.Y. 1996) ......................................................................... 15

*In re Lupron Mktg. & Sales Practices Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) ............................................................ 17, 19

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) .............................................. 7, 14, 17, 18, 22

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................... 7

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) ................................................................................ 17

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re PaineWebber Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................... 22

*In re Prudential Ins. Co. Am. Sales Practice Litig.,*
    148 F.3d 283 (3d Cir. 1998) ............................................... 9, 21

*In re Screws Antitrust Litig.,*
    91 F.R.D. 52 (D. Mass. 1981) ............................................... 13

*Joel A. v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000) ............................................... 17

*Lake v. First Nationwide Bank,*
    156 F.R.D. 615 (E.D. Pa. 1994) ............................................... 24

*Marisol A. v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997) ............................................... 9

*Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.,*
    323 F. Supp. 364 (E.D. Pa. 1970) ............................................... 18

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993) ............................................... 8

*Rutstein v. Avis Rent-A-Car Sys., Inc.,*
    211 F.3d 1228 (11th Cir. 2000) ............................................... 14

*Spicer, et al. v. Mitsubishi Digital Electronics America, Inc.,*
    Superior Court of California, County of Los Angles,
    Civil Action No. BC388009 ............................................... 13

*Stewart v. Abraham,*
    275 F.3d 220 (3d Cir. 2001) ............................................... 9

*Stoetzner v. U.S. Steel Corp.,*
    897 F.2d 115, (3rd Cir. 1990) ............................................... 19

*Wal-Mart Stores v. Dukes, et al.,*
    131 S. Ct 2541 (2011) ............................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ............................................... 1, 17

*White v. NFL,*
    822 F.Supp. 1389, 1400 (D. Minn. 1993) ................................................................... 24

## RULES OF CIVIL PROCEDURE

**Page**

Fed. R. Civ. P. 23 ......................................................................................................13

Fed. R. Civ. P. 23(a) ...........................................................................................7, 8, 14, 16

FED. R. CIV. P. 23(a)(1) .................................................................................................. 8

FED. R. CIV. P. 23(a)(2) ............................................................................................... 8, 9

FED. R. CIV. P. 23(a)(3) ............................................................................................. 11, 12

FED. R. CIV. P. 23(a)(4) ................................................................................................. 12

Fed. R. Civ. P. 23(b) .................................................................................................. 9, 14

FED. R. CIV. P. 23(b)(3) ........................................................................... 13, 14, 15, 16, 19

FED. R. CIV. P. 23(c)(2) ......................................................................................... 19, 23, 24

FED. R. CIV. P. 23(c)(2)(B) ........................................................................................... 23

FED. R. CIV. P. 23(e) ............................................................................................. 17, 19, 23

FED. R. CIV. P. 23(e)(1)(C) ............................................................................................. 1

FED. R. CIV. P. 23(e)(2) ................................................................................................. 17

## TREATISES

**Page**

MANUAL FOR COMPLEX LITIGATION (4th ed. 2002) ............................................................. 17

William B. Rubenstein, Alba Conte & Herbert B. Newberg,
NEWBERG ON CLASS ACTIONS (4th ed. 2002) ............................................................... 8, 19

Class Action Fairness Act, 28 U.S.C. § 1715 ....................................................................... 18

**PRELIMINARY STATEMENT**

Plaintiffs Todd Fisher, Scott Brewer and Steven Taber submit this memorandum in support of their motion requesting class certification and final approval of the Class Action Settlement Agreement. The proposed Class Action Settlement Agreement provides for an extended warranty to cover repairs to Mitsubishi V26/V30 class television capacitors and reimbursement for past capacitor repair costs. The settlement agreement also covers replacement lamps for Mitsubishi V33/V34 chassis class televisions as well as reimbursement for replacement lamp out of pocket costs. The Class Action Settlement Agreement accompanies this memorandum as "Exhibit A". A (proposed) Order Granting Final Approval of the Class Settlement Agreement accompanies this memorandum as "Exhibit B".

As more fully discussed *infra*, the Court should certify the class and approve the proposed Class Action Settlement Agreement because it is a fair, adequate, and reasonable settlement reached through "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); FED. R. CIV. P. 23(e)(1)(C).

**SUMMARY OF THE CASE**

This class action involves certain WD series Mitsubishi DLP televisions (hereinafter "class television" or "class televisions") designed and manufactured by Mitsubishi Digital Electronics America, Inc. (hereinafter "MDEA") between 2004 and 2007.[1] MDEA is the wholly owned American subsidiary of Mitsubishi Electric Corporation, a Japanese corporation. These models are comprised of WD-52327, WD-52525, WD-52725, WD-52825, WD-52825G, WD-62327, WD-62525, WD-62725,

---

[1] DLP (Digital Light Processing) is an all-digital technology used to project and display images on the television screen. Although DLP technology was originally embraced by numerous consumer electronics manufacturers between approximately 1996 and 2008, all manufacturers except MDEA have abandoned production of DLP televisions in favor of LCD and plasma technology. The proposed class (including both subclasses) of Mitsubishi DLP televisions has in excess of 390,000 members. The number of WD series V26/V30 chassis televisions sold between 2004 and 2005 with capacitor failure issues is approximately 187,475. There are eleven model WD series DLP class televisions utilizing the V33/V34 chassis with lamp issues involving some 204,236 units sold in 2006 and 2007.

WD-62825, WD-62825G, WD-52628, WD-62628, WD-52631, WD-57731, WD-57732, WD-65731, WD-65732, WD-Y57, WD-Y65, WD-57831, WD-65831, WD-73732 and WD-73831.

The Second Amended Class Action Complaint and Request for Jury Trial (hereinafter "Second Amended Class Action Complaint") that sought monetary relief incorporates counts for breach of implied warranty of merchantability (Count I), breach of implied warranty of fitness for a particular purpose (Count II), breach of express warranty (Count III), intentional misrepresentation by nondisclosure of material facts (Count IV), breach of the Connecticut product liability act (Count V), violation of the Connecticut Unfair Trade Practices Act (Count VI) and a count for unjust enrichment and restitution (Count VII).[2]

Allegations in the Second Amended Class Action Complaint allege that Class televisions have a propensity for premature component and chassis failure caused by excessive heat together with other design and manufacture defects.  These alleged defects concern capacitor failures in V30 chassis television models WD-52628, and WD-62628, together with V26 chassis television models WD-52327, WD-52525, WD-52725, WD-52825, WD-52825G, WD-62327, WD-62525, WD-62725, WD-62825 and WD-62825G.  The Second Amended Class Action Complaint further alleges that improperly designed DLP lamp housings caused premature lamp failure in Mitsubishi television V33/34 chassis televisions models WD-52631, WD-57731, WD-57732, WD-65731, WD-65732, WD-

---

[2] Plaintiffs contend that Class televisions are predisposed to premature failure in normal anticipated operating environments because one or more of the following conditions existed at the time these televisions were manufactured: (1) The respective class television's Owner's Guide and accompanying literature set forth the wrong maintenance recommendations and maintenance intervals; (2) Class televisions incorporate insufficient ventilation and heat sinks to dissipate heat and/or insufficient heat shielding between components; (3) Class televisions incorporate a defective air filtration system that fails to prevent the accumulation of dust and resulting heat build up on internal components; (4) Class televisions incorporate defective temperature sensors; (5) Class televisions incorporate sub-standard electronic components that prematurely fail including but not limited to capacitors that have insufficient temperature and voltage performance; (6) Electronic circuitry in class televisions is defectively designed and manufactured including but not limited to the chassis, FMT, DM and ballast and other printed circuit boards; (7) Class televisions incorporate defective power supplies; and, (8) Class televisions incorporate defective DLP lamp assemblies. Second Amended Class Action Complaint at ¶¶ 97, 111, 133, 142.

Y57, WD-Y65, WD-57831, WD-65831, WD-73732 and WD-73831.  MDEA and its Japanese parent Mitsubishi Electric Corporation denied all allegations of product defect, warranty breach, misrepresentation, and unfair trade practices together with any and all wrongdoing or liability and asserted numerous affirmative defenses.

**PROCEDURAL HISTORY**

This proceeding was filed in November of 2009 against MDEA and Mitsubishi Electric Corporation.  The parties conducted extensive reciprocal discovery including multiple rounds of interrogatories, document requests, admission requests and depositions.  Plaintiffs' counsel also received extensive materials from a previously filed unsuccessful class action involving V33/V34 lamp cartridge issues together with tens of thousands of documents on CD and DVD discs.  In February of 2011, Mitsubishi Electric Corporation was dismissed with prejudice by agreement of the parties.

This matter was mediated in Los Angeles California on March 31, 2011, before Hon. Lourdes G. Baird (Ret.), a former federal judge associated with JAMS with significant class action experience. Further arm's-length negotiations between counsel occurred over the following five months with continuous telephone conferences, emails and numerous drafts of the Class Action Settlement Agreement until all issues were resolved concerning class representatives' and class members' claims. In exchange for dismissal and release of the claims against MDEA, MDEA will provide repair and reimbursement to class members as provided under the Class Action Settlement Agreement.

The Class Action Settlement Agreement provides significant tangible benefits for the class and is both fair and reasonable given the inherent risks of complex class action litigation particularly legal issues concerning choice of law and class certification.  The Class Action Settlement Agreement fully satisfies all the requirements for final judicial approval and class certification under the applicable rules of civil procedure governing class actions.

**THE CLASS ACTION SETTLEMENT AGREEMENT**

**Settlement Class**

There are two Mitsubishi television sub-classes in this proceeding.  Sub-class 1 consists of: Owners of the Mitsubishi V30 chassis models WD-52628 and WD-62628, and owners of V26 chassis televisions (WD-52327, WD-52525, WD-52725, WD-52825, WD-52825G, WD-62327, WD-62525, WD-62725, WD-62825 and WD-62825G), who experience failures related to the performance of the original capacitors on or before September 30, 2011.  Sub-class 2 consists of: Owners of V33 and 34 chassis televisions (WD-52631, WD-57731, WD-57732, WD-65731, WD-65732, WD-Y57, WD-Y65, WD-57831, WD-65831, WD-73732 and WD-73831) who have not previously received a free lamp cartridge design upgrade.  Excluded from the Settlement Class are: (a) MDEA, its affiliates, and its employees and immediate family members; (b) Persons who are claims aggregators; (c) Persons who claim to be an assignee of rights associated with the Televisions; and (d) Persons who have timely and validly opted out of the Settlement Class pursuant to Section 8.5 of the Class Action Settlement Agreement.

**CLASS ACTION SETTLEMENT AGREEMENT TERMS**

**V26 and V30 Class Television Chassis warranty Extension, Reimbursement or Replacement Option**

MDEA has agreed to repair the V26/V30 chassis televisions for failures that occur up to and including September 30, 2011 and to reimburse the class members for repair costs they have incurred between April 1, 2011 and September 30, 2011.[3] These televisions were manufactured in 2004 and

---

[3] Sections 4.2.1 and 4.2.2 of the Class Action Settlement Agreement recite as follows:

4.2.1 If a Class Member's V30 chassis model WD-52628, WD-62628 or V26 chassis television experienced a failure related to the performance of the original capacitors prior to September 30, 2011, and the Class Member has not yet paid to have it repaired, MDEA will provide either (i) a repair at no cost to the Class Member for parts or labor or (b) the opportunity to purchase a 2012 Mitsubishi DLP television at dealer's cost.

4.2.2 Class members who incurred charges stemming from repairs to the original capacitors in their V30 chassis models WD-52628, WD-62628 or V26 chassis televisions between April 1, 2011 and

2005, so this provides a substantial benefit four to five years *after* the original warranty on these televisions would have expired.  Normally, the capacitor repair procedure outside of warranty costs in excess of $750.00 for in-home chassis removal, chassis rebuild and re-installation of the chassis. Alternatively, the owners of these televisions may elect to purchase a 2011 model Mitsubishi DLP television at dealer cost that represents a substantial savings (20-25%) over retail cost.  It is difficult to place an exact value on this settlement benefit because not all V26/V30 chassis class televisions experience capacitor failure.

**V33 and V34 Class Television Chassis No Cost Replacement of Original DLP Lamp Cartridge or Reimbursement**

MDEA will supply one new design DLP lamp cartridge to owners of V33/V34 televisions (sub class 2) who have not previously received a free new lamp cartridge design from MDEA or reimbursement for the cost of the lamp if purchased by the owner.  OEM class television lamp cartridges currently sell between $179.00 and $249.00 depending on the model television.[4]  It is

---

September 30, 2011 will be reimbursed for the reasonable expenses (parts and labor) incurred for such repairs to the extent that such repairs have not already been reimbursed. Other than as provided above, there will be no other reimbursement for repair expenses made to Settlement Class members relating to the V30 chassis models WD-52628, WD-62628 or V26 chassis televisions.

[4] Sections 4.3.1 and 4.3.2 of the Class Action Settlement Agreement recite as follows:

4.3.1 If a Class Member's V33 or 34 chassis television (WD-52631, WD-57731, WD-57732, WD-65731, WD-65732, WD-Y57, WD-Y65, WD-57831, WD-65831, WD-73732 and WD-73831) experiences a lamp failure on its original lamp between April 1, 2011 and September 30, 2011, and the Class Member has not already received a free new design lamp from Mitsubishi, the Class Member is eligible to receive a free replacement lamp that will be warranted for three months from the date it was shipped to the customer.

4.3.2 Class Members who incurred charges for lamp replacement for the originally installed lamps on their V33 and V34 chassis televisions between April 1, 2011 and September 30, 2011 will have the choice of (i) receiving a free replacement lamp from Mitsubishi (unless they have already received a replacement lamp from Mitsubishi that included the new design) or (ii) being reimbursed for the reasonable costs of the parts for such replacement (to the extent the costs for such parts have not already been reimbursed). Other than as provided above, there will be no other reimbursement for repair or replacement expenses made to Settlement Class members relating to the V33 and V34 chassis televisions.

estimated that there are over 125,000 members of this sub-class.[5]   Thus, the potential value of this settlement benefit is substantial.   Further, MDEA had previously supplied approximately 15,000 new design lamps without charge to members of this sub class.   As with the V26/V30 models, this part of the settlement will provide a substantial benefit to class members years after the warranty on these V33/V34 televisions expired.[6]

### Warranty Fulfillment Benefits

After the Settlement becomes final, MDEA will maintain a dedicated information webpage located at the Televisions' model home pages on www.settlement.mdea.com.   For the duration of the Warranty Fulfillment Period, MDEA will also maintain a dedicated toll-free telephone number for Settlement Class members to obtain a telephone diagnosis and, if necessary, warranty repair with respect to the Warranty Extension.   MDEA will create, train and maintain during the Warranty Fulfillment Period a dedicated team of technical representatives to handle telephone calls to the dedicated toll-free telephone number under the Warranty Extension to:   (i) diagnose any necessary repairs over the telephone; (ii) arrange as necessary for parts shipments, if necessary, as soon as practical after the telephone diagnosis; and (iii) arrange in-home service calls.

### Dispute Resolution Procedures

If a Settlement Class member and MDEA cannot resolve an issue regarding the efficacy of repairs provided under the warranty extension hereunder after good faith attempts to do so, the Settlement Class Member may choose either to: (i) raise the issue with the Court, which will either

---

[5]   MDEA has also agreed to pay class counsel not more than $260,00.00 in attorney's fees and expenses subject to Court approval.   Attorney's fees and expense reimbursement were not discussed until after all class claims had been resolved.   Class representatives Fisher, Brewer and Taber will each receive a class representative incentive award of $5,000.00 subject to approval.

[5]  This proceeding also served as a catalyst for MDEA to both continue and in August of 2010 increase the benefits its informal customer assistance programs for class televisions during the pendency of the litigation.

resolve the issue itself or appoint a magistrate judge to resolve any such issues; or (ii) submit the dispute to binding arbitration managed by the Council of Better Business Bureaus ("BBB"). All administrative expenses associated with any fees charged by the BBB for participation in the arbitration process will be paid by MDEA. Arbitration shall be adjudicated through the local BBB in nearest proximity to Settlement Class member's residence.

### Settlement Administration and Administrative Costs

MDEA will bear all costs of dissemination of the Class Notice together with administration of the settlement. MDEA will use its internal resources and/or existing third-party fulfillment vendors to administer the claims and fulfillment processes set forth in the Class Action Settlement Agreement. The settlement administrator will provide Class Counsel with such information concerning notice, administration and implementation of the settlement as he may reasonably request.. MDEA served on class counsel and filed with the Court a certification of compliance with the mailing, publication and Internet posting requirements set forth in the Class Action Settlement Agreement at §8. Declarations of class counsel accompany this memorandum identifying individuals requesting exclusion from the Settlement Class and a general description of class objectors. *See* Declaration of Thomas P. Sobran Concerning Class Settlement Opt Outs and Declaration of Thomas P. Sobran Concerning Class Settlement Objectors accompanying this memorandum as Exhibits C and D, respectively.

## I. THE SETTLEMENT CLASSES SHOULD BE CERTIFIED[7]

### A.      The Prerequisites of Rule 23(a) Have Been Satisfied for Class Certification

The four threshold elements of Rule 23(a) are: (1) "the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

---

[7] "[T]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 373 (S.D.N.Y. 2000) ("our Court of Appeals has directed district courts to avoid applying Rule 23 under a restrictive interpretation.").

representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). Stated more succinctly, the four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation.  As demonstrated *infra,* these four requirements have been satisfied in this proceeding for settlement purposes together with the prerequisites of Rule 23(b).

### 1.    Numerosity

The Rule 23(a)(1) numerosity standard requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  "Precise quantification of the class members is not necessary because the court may make common sense assumptions to support a finding of numerosity." *German v. Federal Home Loan Mortgage Corp.,* 885 F.Supp. 537, 552 (S.D.N.Y. 1995). While there is no magic number of class members that qualifies for class certification, courts have generally found groups of more than fifty to satisfy the numerosity requirement of R. 23(a)(1).

Courts in the Second Circuit have determined that a class is sufficiently numerous "when it comprises forty or more members." *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995).  The Court can consider geographic dispersion and impracticability of joinder of individual plaintiffs in a single suit in determining numerosity requirement. Alba Conte & Herbert Newberg, Newberg on Class Actions §§ 18:2 to 18:4 (4th ed. 2002).  "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

This proceeding involves over a hundred thousand owners of the subject class televisions who are potential class members.  There is no question the class is so numerous that joinder of all settlement class members would be impracticable and the numerosity requirement is easily satisfied.

### 2.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The

commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "Rule 23 does not require that all questions of law or fact be common, it only requires that the common questions predominate over the individual questions." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 562 (S.D.N.Y. 2004); *Dura-Built Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y. 1981).   There is no requirement that class members have to share identical claims arising from the same operative facts. *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 310 (3d Cir. 1998); *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (certification not defeated by factual differences class members' claims). "The commonality requirement will be satisfied if the named plaintiffs share *at least one* question of fact or law with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) (emphasis added) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)); *Chiang v. Veneman*, 385 F.3d 256, 265 (3d. Cir. 2004). *See In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145 (2d Cir. 1987)(A single common question is sufficient to satisfy the requirements of Rule 23(a)(2)).

The Second Amended Class Action Complaint describes the questions of law or fact common to the Class that predominate over individual issues.   These common questions of law or fact in this case were set forth in the Second Amended Class Action Complaint at ¶24.  They include but are not limited to:

> 24. Common questions of law and fact exist as to all members of the proposed sub-classes and predominate over any and all issues of law and fact affecting individual members of the class.  These issues include but are not limited to:
>
> a.     Whether class televisions are defectively designed and/or manufactured so as to predispose the television to premature failure including but not limited to DLP light engines and lamp assemblies;

b.      Whether class televisions sustained damage directly or indirectly by use of defective electronic components including but not limited to electronic components such as printed wire boards and capacitors that were of inadequate voltage and/or heat rating;

c.      Whether class televisions sustained damage directly or indirectly by use of defective heat sinks, inadequate cooling fans and/or air filtration to prevent accumulation of dust on internal components;

d.      Whether the defendants conducted adequate testing of class televisions to determine maintenance procedures and durational warranties;

e.      Whether the defendants breached their implied warranties in that class televisions were defective with respect to design and manufacture;

f.      Whether the defendants breached their implied warranties in that class televisions were accompanied by an Owner's Guide incorporating incorrect television maintenance recommendations and service intervals;

g.      Whether the defendants breached their express warranties in that class televisions were defective with respect to design and manufacture;

h.      Whether the defendants fraudulently or negligently misrepresented and/or concealed material facts concerning the characteristics of class televisions;

i.      Whether the defendants were aware of defects in class televisions and actively, affirmatively and fraudulently concealed the existence of defects in the televisions and/or incorrect information incorporated in the respective accompanying Owner's Guides;

10

j.      Whether the defendants committed unfair and deceptive business trade act practices in the sale of class televisions including the accompanying warranties and subsequent secret warranties;

k.      Whether the defendants had a duty to disclose their knowledge of class television defects and knowledge that the Owner's Guide for class televisions set forth incorrect maintenance recommendations and intervals;

l.      Whether the defendants were unjustly enriched by their warranty breaches, misrepresentations and deceptive business practices;

m.      Whether proposed class members are entitled to restitution, monetary damages and/or injunctive relief;

n.      Whether the court should establish a constructive trust funded by the benefits conferred upon the defendants by their wrongful and unlawful conduct;

o.      Whether class televisions have a diminished life and residual value;

p.      Whether proposed class members are able to economically afford individual litigation against the defendants; and,

q.      Whether the defendants had a duty to disclose the safety risks of overheated class televisions catching fire.

These common issues are sufficient to satisfy the commonality requirement for certification and settlement purposes of Rule 23(a).

### 3.      Typicality

Rule 23(a)(3) requires "the claims or defenses of the class representative be typical of the claims or defenses of the class."  *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 631 (3d Cir. 1996). The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In*

11

re Drexel Burnham Lambert Group, 960 F.2d 285, 291 (2d Cir. 1992).   The claims of class

representatives Fisher, Brewer and Taber are typical of the proposed class for settlement purposes.

Their claims arise out of the same course of events and conduct and are premised on the same legal

theories as those that could have been asserted by absent class members.

A class representative should "have the incentive to prove all the elements of the cause of

action which would be presented by the individual members of the class were they initiating individual

actions." Dietrich v. Bauer, 192 F.R.D. 119, 124 (S.D.N.Y. 2000).   The class representatives are not

subject to any unique defenses or claims which would differentiate them from the rest of the proposed

Class as prohibited by Rule 23(a)(3).   Class representatives Fisher, Brewer and Taber have claims that

are identical to absent class members and more than satisfy the typicality requirements of Rule

23(a)(3).

### 4.        Adequacy of Representation

The adequacy of representation requirement of Rule 23(a)(4) "serves to uncover conflicts of

interest between named parties and the class they seek to represent." Amchem Prods. Inc. v. Windsor

521 U.S. 591, 625 (1997)(internal citations omitted).   This requirement is satisfied where the class

representatives have common interests with unnamed members of the settlement class and have

retained competent counsel.   In re Drexel Burnham Lambert Group, 960 F.2d at 291. "The [adequacy

requirement of Rule 23(a)(4)] has two parts.   The moving party must show first that the interests of the

representative party will not conflict with the interests of any of the class members, and second, that

counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the

proposed litigation." Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985) (internal

citations omitted).

Class representatives Fisher, Brewer and Taber have no actual or potential conflicts with other

members of the settlement class that would impair vigorous prosecution of all outstanding claims

against defendant MDEA.   The class representatives have the same incentives as the settlement class in

obtaining replacement lamps and other compensation for their respective televisions that they allege failed prematurely. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("so long as all class members are united in asserting a common right, such as achieving the maximum recovery for the class, the class interests are not antagonistic for representation purposes") (internal citation omitted).

Counsel for the class representatives are experienced attorneys in complex litigation including consumer class actions that are competent to conduct this proceeding.  This litigation was diligently and vigorously conducted from the initial pre-litigation investigation through discovery and settlement negotiation.

The settlement procured achieves the best possible results and resolves the issues confronted by all class members.  This proceeding produced significant tangible benefits for class members when a nearly identical California class action against MDEA handled by a well-known class action firm was dismissed with prejudice following a motion for summary judgment shortly before this proceeding was commenced.  *See Spicer, et al. v. Mitsubishi Digital Electronics America, Inc.*, Superior Court of California, County of Los Angles, Civil Action No. BC388009 (also involving defective lamps for Mitsubishi DLP WD series V33/34 televisions).

**B.      The Requirements of Rule 23(b)(3) Have Been Satisfied**

After determining whether the proposed class satisfies the requirements of Rule 23(a), the Court should conduct an analysis under Rule 23(b)(3) as to whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 56 (D. Mass. 1981); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); FED. R. CIV. P. 23, Advisory Committee Note to 1966 Amendments, *reprinted in* 39 F.R.D. 69, 102-03 (1966).

Rule 23(b)(3) enables the class action mechanism to efficiently adjudicate nearly identical claims to achieve economies of "time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or producing undesirable or bringing about other undesirable results." Advisory Committee Note to 1966 Amendments.  In this proceeding, common questions predominate for settlement purposes and a class action is the superior method to adjudicate the claims of the class.

### 1.     Predominance Requirement of Common Questions of Law or Fact

The Rule 23(b) predominance requirement analyzes the cohesiveness of the proposed class. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623 (1997).  This requirement is satisfied "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 517 (S.D.N.Y. 1996) (internal citations omitted).  [P]redominance is a test readily met in certain cases alleging consumer … fraud." *Amchem,* 521 U.S. at 625.  In this class action, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000).

There is common evidence concerning MDEA manufactured class televisions.  If each sub class member brought a separate claim, the same evidence would be presented on the existence and nature of the defect within the sub class.  In each of the two sub classes, individual models share a common design and identical components despite different model designations.  These evidentiary issues of law and fact satisfy the predominance requirement or Rule 23(b).

### 2.     Superiority Requirement

This proceeding also satisfies the second prerequisite that a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  In determining the superiority requirement, the court should consider: "(a) the interest of

members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3).

### (a)   Interests of Individual Members

There are several hundred thousand class members who purchased the Class Televisions. These individuals would be effectively precluded from prosecuting their own claims independently because of the complexity and cost of the litigation together with other factors such relatively small individual damages and the inefficacy of proceeding separately. The interests of Class Members in individually controlling the prosecution and defense of separate actions are outweighed by the efficiency of the class action mechanism. This principle was succinctly stated by the Supreme Court in *Amchem*:

> [T]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for individuals to bring a sole action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617. In many instances, the hard, cold economic reality is that individual class members "have insufficient economic justification for commencing expensive litigation." *In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 386 (S.D.N.Y. 1996).

The exclusion provision of the Class Action Settlement Agreement allows individual class members the opportunity to "opt-out" of the settlement and pursue their own individual remedy. Accordingly, the exclusion provision fully preserves the due process rights of those who do not wish to be included in the settlement.

### (b) Pending Proceedings

The Rule 23(b)(3) analysis examines the extent and nature of any other litigation concerning the controversy already begun by or against class members as a superiority factor. This inquiry focuses on whether certifying a class would be unproductive given the existence of other litigation. *See Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 184 (4th Cir. 1993) (commenting that "there were not so many preexisting college asbestos lawsuits as to make a class action unproductive"). Counsel for the Plaintiffs is unaware of any other individual or class actions currently pending against MDEA for the defects alleged in this proceeding.

### (c) Concentration of Litigation in One Forum

Judicial economy, fairness and common sense dictate that this proposed class action should be certified for purposes of settlement in this forum since there are no other proceedings currently pending against MDEA.

### (d) Manageability

This Court is not required to undertake an analysis of class manageability for purposes of certifying a class for settlement purposes. Where a court is "[c]onfronted with a request for settlement-only class certification, a [local] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

After an analysis under Rules 23(a) and 23(b)(3), it is evident that that class certification is appropriate. Accordingly, the Court should make a determination that class certification is appropriate. *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 138-9 (D. Mass. 2004).

## II.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT AGREEMENT SINCE IT IS FAIR, REASONABLE AND ADEQUATE WHEN ANALYZED UNDER THE GRINNELL FACTORS.

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors*

16

*Corp. Pick-Up Truck Fuel Tank,* 55 F.3d 768, 784 (3d Cir. 1995); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)("strong judicial policy in favor of settlements, particularly in the class action context")   "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e).  The settlement should be approved "if it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Where a class action settlement is "fair, adequate, and reasonable, and not a product of collusion," the settlement should be approved by the district court.  *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

The Second Circuit set out the factors that courts should analyze in determining whether a proposed class action settlement is fair, reasonable and adequate in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) *abrogated on other grounds* by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000));  *Wal-Mart Stores, Inc. at* 117-119.   "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc. at* 116   (quoting MANUAL FOR COMPLEX LITIGATION § 33.42 (3rd ed. 1995)).   Those nine so-called "Grinnell factors" are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

> *Id*. at 463 (internal citations omitted).

### A. *Grinnell* Factor One: The Complexity, Expense and Likely Duration of the Litigation

The complexity, expense and likely duration of this litigation favor settlement approval. Although the motion to dismiss was fully briefed but not acted upon by the Court at the request of the parties, this case would have most probably continued through a long, costly and torturous litigation

process.  That process includes the inevitable discovery motions, summary judgment motion, class certification requests, extensive pre-trial motions, lengthy trial and resulting appeal.  This proceeding would have continued onward for years without any certainty of securing benefits for class members. The settlement secures substantial benefits now without the delay and uncertainty of protracted litigation.

### B. *Grinnell* Factor Two: The Reaction of the Class to the Settlement

Named class representatives Fisher, Brewer and Taber are aware of and support the Settlement agreement.  Notice of the Settlement Agreement together with other required settlement documents were delivered to the appropriate governmental officials of all 50 states, the District of Columbia and the U.S. Attorney General pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.[8] No state or federal official registered an objection to the settlement.

MDEA manufactured and sold 187,475 V26/V30 model class televisions with the potential for premature chassis failure caused by capacitor issues.  MDEA also manufactured and sold 204,236 class televisions with the potential for premature lamp failure caused by cartridges incorporating mesh screens that clog and cause lamp overheating and burnout. All settlement objections or requests for opt out were required to be postmarked no later than May 9, 2012 under the terms of the preliminary approval order.  Class counsel received 65 objections to the settlement agreement from owners of Mitsubishi class televisions.  Fifteen objections concerned the duration and timing of the extended warranty as insufficient.  Another ten objections concerned the fact their model TV was not part of the settlement or that a particular component was not included in the settlement.  The remaining objections ranged from requests for a free LCD TV to insufficient repair assistance. Declaration of Thomas P. Sobran Concerning Class Settlement Objectors at ¶¶3-4.

---

[8] 28 U.S.C. § 1715(b) requires "notice of any proposed class action settlement [must be provided] to the appropriate state official, which in most cases is the State attorney general."

Thirty-one class television owners / representatives opted out of the settlement.  Fifteen owners provided an explanation for their decision not to participate in the settlement.  Of the fifteen, five class television owners discarded or gave away their televisions.  Five television owners received new free replacement televisions from Mitsubishi, were satisfied with prior repairs or had no issues.  One television owner was deceased and his representative requested to opt out.  Declaration of Thomas P. Sobran Concerning Class Settlement Opt Outs at ¶¶ 3A, 3B.

The number of class television owners who either objected to or opted out of the settlement is .2% of the total number of class television owners.  The total number of opt outs and objectors combined is statistically insignificant and "strongly favors settlement."  *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3rd Cir. 1990) (a 9.68% objection rate, 29 objectors out of a class comprised of 281 "strongly favors settlement").[9]  Since the deadline for opting out and/or objecting to the settlement has lapsed, it is appropriate for the Court to consider the absence of appreciable numbers of class member opt outs or objectors to the settlement.

### C. *Grinnell* Factor Three: The Stage of the Proceedings and Amount of Discovery Completed

There is no litmus test for the court to determine whether counsel have performed adequate work in assessing whether the merits of the case are fully understood and settlement is appropriate. *See* 4 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:45 (4th ed. 2002 & Supp. 2009).  The third *Grinnell* factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp Litig*, 264 F.3d 201, 235 (3d Cir. 2001).

Counsel for the parties had more than an "adequate appreciation" of the merits of the

---

[9] Notice was sent to class television owners pursuant to the Order Granting Preliminary Approval entered on January 26, 2012.  The notice fully complies with FED. R. CIV. P. 23(c)(2) and due process requirements.  *See infra* at p. 22.

proceeding, including their respective strengths and weaknesses.  Class counsel conducted a thorough independent investigation of class television defects including teardowns and examinations of exemplar class televisions and competitor products.  Extensive formal discovery was also undertaken focusing on clearly defined design and manufacture issues in cooperation with experts in the area of electronics and television repair.  Class counsel reviewed in excess of 10,000 documents including deposition transcripts of Mitsubishi employees convened in other similar litigation.  Settlement was neither premature nor unconsidered and resulted from an all day mediation session before a retired federal judge with considerable class action experience and months of subsequent negotiation to iron out final details.

### D. *Grinnell* Factors Four and Five: The Risks of Establishing Liability and Damages

"On this issue, the court need not conduct a mini-trial and must 'to a certain extent, give credence to the estimation of the probability of success proffered by class counsel[.]'" *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 181 (E.D. Pa. 2000)(internal citation omitted).

This class action consists of two television sub-classes.  The misrepresentation and fraud counts set out in the First Amended Class Action Complaint and Request for Jury Trial sought to sidestep statutes of limitations defenses.  Class counsel is reasonably confident the V33/V34 television lamp liability issues are provable since a component part manufacturer cautioned against using a fine mesh screen on the lamp cartridge in pre-production correspondence.  This contention assumes hearsay and other evidentiary objections are successfully countered.  Subsequent remedial measures also demonstrate the propensity of the mesh to capture debris, clog and cause lamp overheating with the resultant premature failure.  The damages aspect of this portion of the case is somewhat diminished by MDEA's voluntary but unpublicized free one time replacement lamp policy.  Purchasers of V33/V34 televisions who called MDEA customer relations complaining of premature lamp failures were offered a replacement lamp at no charge.

The second sub-class concerns V26/V30 board failures involving radial electrolytic capacitors and other sub-components.  The scienter element on this issue is problematic since MDEA claims it learned of premature capacitor failures well after production of these model class televisions ceased. Other problematic liability issues are class member reliance on MDEA statements and overcoming a host of affirmative defenses that any of which individually proven would be fatal to the V26/V30 sub-class.  As with the lamp defect issue, MDEA offered unpublicized customer assistance to owners of V26/V30 chassis televisions with premature capacitor failures outside of the one-year limited warranty.  The settlement further extends and increases the warranty assistance and assures immediate relief as compared to uncertainty and further delay.  The Court should balance the benefits afforded the Settlement Class, including the immediacy and certainty of a recovery for a definitive Settlement Class against the risks of continued litigation. *See Prudential*, 148 F.3d at 317 (class "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation."). Additionally, there is a consumer review mechanism built into the settlement agreement.  These two *Grinnell* factors support approval of the settlement.

**E. *Grinnell* Factor Six: The Risks of Maintaining the Class Action Through Trial**

Obtaining and maintaining class certification over more than twenty-model televisions involving diverse laws of the 50 states and the District of Columbia presents considerable logistical and legal issues.  If this matter proceeded to trial, MDEA would have opposed certification as inappropriate on the basis individual issues predominate over proposed common class issues.  *See In re Hitachi Television Optical Block Cases*, No. 08-cv-1746 DMS (NLS), 2011 WL 4499036 (S.D. Cal. Sept. 27, 2011) (class certification denied after a finding individual issues predominated in putative class action involving different model television models); *Wal-Mart Stores v. Dukes, et al*., 131 S. Ct 2541, 2556-2257 (2011)(failure to establish common question among individual claims precludes class certification).  Assuming that plaintiffs could initially obtain class certification, there is a significant

risk of decertification as the proceeding progresses and additional case management issues arise.  *See In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 473 (S.D.N.Y. 1998)(decertification precludes any recovery for class).  The risks of failing to obtain certification or decertification support settlement.[10]

### F. *Grinnell* Factor Seven: The Ability of the Defendant to Withstand a Greater Judgment

"[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Litig.,* 171 F.R.D. 104, 129 (S.D.N.Y. 1997).  This proposition is particularly true where other *Grinnell* factors support the approval of the settlement agreement.  *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir. 2001) (court did not abuse its discretion approving settlement despite ability of the defendant to withstand a greater judgment, other *Grinnell* factors supported settlement).

### G. *Grinnell* Factors Eight and Nine: The Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation

The final two *Grinnell* factors consider whether the settlement is within a range of reasonableness compared to a "possible recovery in light of all the attendant risks of litigation." *Grinnell,* 495 F. 2d at 463.  The Second Circuit commented that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. " *Id.* at 455.

The settlement agreement accomplishes the two distinct purposes of obtaining one free replacement lamp for owners of V33/V34 chassis models and repairs for V26/V30 chassis models with capacitor issues.[11]  Presently, the V26/V30 model televisions are now between 7 and 8 years old.  The

---

[10] A district court "'[c]onfronted with a request for settlement-only class certification, … need not inquire whether the case, if tried, would present…problems, for the proposal is that there be no trial.'" *Global Crossing,* 225 F.R.D. 436, 451 (S.D.N.Y. 2004)(quoting *Amchem Prods. Inc. at* 620).

V33/V34 chassis models are a minimum of 5 plus years old.  Technological advances and massive price decreases for plasma and LCD televisions have severely diminished the residual value of class DLP televisions.  There is very limited demand for DLP televisions both new and particularly used.

III.   **THE PROPOSED CLASS NOTICE IS REASONABLE, APPROPRIATE AND SATISFIES FED. R. CIV. P. 23(C)(2) AND DUE PROCESS REQUIREMENTS**

FED. R. CIV. P 23(c)(2)(B) recites: "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

The Class Notice clearly and concisely states in plain and easily understood English the following information: (1) the case caption including court and docket number; (2) a detailed description of the Class members; (3) identification and nature of Class claims; (4) a description of the Settlement terms; (5) the names, addresses and phone numbers for Class counsel; (6) a statement of the maximum amount of attorneys' fees and expenses that may be requested by Class counsel; (7) the Final Fairness Hearing date; (8) a description of Class Members' opportunity to appear and be heard at the hearing; (9) the procedure and deadline for filing objections to the Settlement; (10) a statement describing the procedure and deadline for filing exclusion requests; (11) consequences of exclusion from the Settlement; (12) consequences of remaining in the Class; and, (13) the manner in which to obtain further information.[12]

---

[11] MDEA documents produced during discovery validate that majority of V26/V30 chassis models either never failed or were repaired under an informal extended warranty.  As discussed earlier, the settlement agreement formalizes and extends the warranty in scope and duration.

[12] MDEA will build and host a website on the World Wide Web to provide information on the settlement, information on the benefits provided herein, and the claims process which shall be live for the duration of the warranty extension period (the "Settlement Website").  MDEA will post a link and notice to the Settlement Website on its home page for four (4) weeks following preliminary settlement approval, and will maintain a link on the model home pages of the Televisions within the www.MDEA.com/support website for as long as the Settlement Website is live. Class Action Settlement Agreement at § 8.1.

The Notice fully satisfies the requirements of Rule 23(c)(2) and 23(e).  MDEA will send direct written notice to all consumers who purchased the Televisions or received them as gifts and for whom it has obtained contact information from its registered database or contact information from Plaintiffs' counsel.  Class Action Settlement Agreement at § 8.1.  On March 21, 2012, MDEA published a summary notice of the settlement in the form agreed by the parties and approved by the Court, in *USA Today* in 1/8 page format.[13]  The notice procedure implemented in this proceeding satisfies Rule 23 and requirements of due process.  *White v. NFL,* 822 F. Supp. 1389, 1400 (D. Minn. 1993) (notice by mail to identified class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements"), *aff'd,* 41 F.3d 402 (8th Cir. 1994), *cert. denied sub nom., Jones v. NFL,* 515 U.S. 1137 (1995), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 628 (E.D. Pa. 1994) (mail notice to known class members and publication in the national edition of as to all others in class satisfies notice requirements). Two days later, on March 23, 2012, MDEA commenced email and regular mail dissemination of the Class Notice.

The proposed Notice was reasonable, appropriate and satisfies the procedural requisites of FED. R. CIV. P 23(c)(2) and substantive requirements of due process.

---

[13]  *USA Today* is the largest volume national newspaper with a daily circulation of approximately 1.8 million not including Internet subscribers.

## CONCLUSION AND RELIEF REQUESTED

For the reason elaborated above, Plaintiffs Todd Fisher, Scott Brewer and Steven Taber request that the Court certify the class for final settlement and approve the class settlement as fair, adequate and reasonable.

Todd Fisher, Scott Brewer and
Steven Taber,
By their attorneys,
on behalf of themselves and class members,

*Thomas P. Sobran*
Thomas P. Sobran, Esquire
Thomas P. Sobran, P.C.
7 Evergreen Lane
Hingham, MA 02043
(781) 741-6075
tsobran@sobranlaw.com
phv 03773
*Arthur S. Wells*
Arthur S. Wells, Esquire
Law Offices of Arthur S. Wells
339 Main Street, Suite 501
Worester, MA 01608
(508) 767-0873
aswells@awellslaw.com
CT 03404

Certificate of Service

I certify that a copy of the above document entitled was docketed on May 21, 2012 through the Electronic Case Filing system. There currently are no non-ECF participants in this proceeding.

*/s/ Thomas P. Sobran*
Thomas P. Sobran